UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

CPL MEDIA GROUP, INC.,
and MICHELLE LARKIN,

      Plaintiffs

vs.

IRVING FREIBERG, SCOTT FREIBERG,
ABBEY FREIBERG, ABBEYSCO, LLC, and
 LONE STAR BRANDS, LLC,

      Defendants
_____/

## VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

COME NOW the plaintiffs, CPL MEDIA GROUP, INC., a Florida corporation, and MICHELLE LARKIN, and sue the defendants,  IRVING FREIBERG, SCOTT FREIBERG, ABBEY FREIBERG, ABBEYSCO LLC, and  LONE STAR BRANDS, LLC, and for their causes of action allege as follows:

<u>Nature of Actions</u>

1.    This complaint sets forth causes of action for unfair competition under § 41 of the Lanham Act, 15 U.S.C. § 1125(a), for unlawful interception of electronic communications pursuant to 18 U.S.C. § 2707(a), for various causes of action under the laws of Florida, and for declaratory relief pursuant to 28 U.S.C. § 2201.  The plaintiff is seeking damages, injunctive relief and a declaratory judgment.  The plaintiff will also seeking a temporary restraining order and a preliminary injunction pursuant to Rule 65, Fed.R.Civ.P.

<u>Jurisdiction and Venue</u>

2.    This court has jurisdiction pursuant to 28 U.S.C. §1331 because of causes of

action arising under the laws of the United States and also original jurisdiction pursuant to 15 U.S.C. § 1121(a).   The court has supplemental jurisdiction over causes of action under Florida law's supplemental jurisdictional authority, 28 U.S.C. § 1367(a).

3.      Venue is proper in the West Palm Beach Division of the Southern District of Florida pursuant to 28 U.S.C. §1391(b) because the plaintiff  corporation is a business in Palm Beach County, Florida, and plaintiff Larkin is a resident of Palm Beach County.  Defendants Irving, Scott and Abbey Freiberg are residents and citizens of Palm Beach County, Florida and the principal place of business of Lone Star Brands, LLC is Boca Raton, Florida.  The central facts giving rise to the causes of action herein occurred in Palm Beach County, Florida.

<u>Parties</u>

4.      Plaintiff CPL MEDIA GROUP, INC., is a corporation organized and existing under the laws of the State of Florida.  It's principal address and mailing address is 8081 North Congress Ave., Boca Raton, FL 33487.   It will be referred to hereinafter as "CPL."

5.      Plaintiff MICHELLE LARKIN is a resident and citizen of Palm Beach County, Florida and has been so at all times relevant to the causes of action herein.

6.      Defendant IRVING FREIBERG is a resident of Palm Beach County, Florida and has been so at all times relevant to the causes of action herein.

7.      Defendant SCOTT FREIBERG  is the son of defendant IRVING FREIBERG. He is a resident of Palm Beach County, Florida and has been so at all times relevant to the causes of action herein.

8.      Defendant ABBEY FREIBERG is the wife of defendant IRVING FREIBERG. She is a resident of Palm Beach County, Florida and has been so at all times material to the causes of action herein.

9.      Defendant ABBEYSCO LLC is a domestic limited liability company created and organized under the laws of the state of Texas.  Defendant ABBEY FREIBERG is the Managing Member.   Its principal address is 701 Brazos Street, Suite 720, Austin, Texas 78701.  It is not active and its registration has been forfeited for failure to pay taxes according to the public records of the Texas Secretary of State.

10.     Defendant LONE STAR BRANDS, LLC is the name of two different limited liability companies, both created and managed by defendant IRVING FREIBERG.  The name "Lone Star Brands, LLC"  is the name of a limited liability company organized and existing in the State of Florida, with a principal address of 5295 Town Center Road, Suite 302, Boca Raton, Florida 33486.  It was created on March 19, 2009, but is now inactive for failure to file annual reports.  Its original name was "Loan Star Brands, LLC."  The name was changed by Defendant Irving Freiberg , the Managing Member of the Florida LLC, to "Lone Star Brands, LLC."

11.     "Lone Star Brands, LLC"  is also a domestic limited liability company organized and created under the laws of the State of Texas with a principal address of 701 Brazos St., Suite 720, Austin, Texas 78701, which is the same address as defendant Abbeysco, LLC.  It is also in inactive status.  "Irv Freiberg" is identified in the records of the State of Texas as the managing member of the Texas limited liability company.

12.     Hereinafter, when referring to "Lone Star Brands, LLC," or "Lone Star,"  unless otherwise noted, the plaintiffs will be referring to both inactive limited liability companies because the plaintiffs do not know which of the two separate legal entities the FREIBERG defendants were acting for when referring to "Lone Star Brands" or "Lone Star Brands, LLC."

<u>General Allegations</u>

13.     In November, 2011, in Delray Beach, Florida, plaintiff Michelle Larkin and her fiancé and business associate, Marc Sporn, met defendant Irving Freiberg by chance at a restaurant in Delray Beach, Florida.  Marc Sporn had known Irving Freiberg for nine or ten years, but had not seen him in several years.

14.     After renewing acquaintances with each other, Irving Freiberg started visiting Marc Sporn at his offices at 1710 North Federal Highway, Delray Beach, to chat and discuss possible business opportunities.

15.     Marc Sporn (hereinafter referred to as "Marc" or "Sporn") managed the business of Starr Insurance Group, Inc., a Florida corporation, at that address.  Also at that address was the business of Starr Medical Supplies, Inc., a Florida corporation, of which plaintiff Michelle Larkin is the president and director.  Marc was working with Michelle Larkin in that business and also

in the insurance business of Starr Insurance Group.

16.     After several visits to plaintiffs' office in an effort to ingratiate himself to them and to impress them by driving his Bentley convertible automobile and wearing very expensive jewelry, Irving Freiberg visited with Marc Sporn and Michelle Larkin at her residence in Delray Beach in late November, 2011. At that time Irving Freiberg admitted that he had a legal problem "up north" and as a result had paid over $14 million in restitution. He indicated all his legal problems were resolved and that he had not done anything wrong. Irving Freiberg further stated that he was presently engaged in an internet business that was generating substantial income; however, he needed to borrow money on a short term basis to guarantee its success. Plaintiff Michelle Larkin then loaned defendants Irving Freiberg and Lone Star $25,000.00 to be repaid in 30 days. Freiberg only repaid her $10,000.00. Attached hereto as Exhibit 1is a copy of the bank statement reflecting the transfer of $25,000 from Michelle Larkin's bank account to the Lone Star Brands' account at Comerica bank. Irving Freiberg and Lone Star still owe Michelle Larkin the balance of the loan, which is $15,000.

17.     Irving Freiberg also advised Marc Sporn and Michelle Larkin that he had contacts with a website developer and management firm in India and that with his connections and knowledge, there were opportunities for developing an internet based business in the United States. He encouraged Michelle and Marc to consider an internet based business.

18.     Unfortunately, Marc and Michelle were very naive in dealing with Irving Freiberg. They did not learn until months later that Irving Freiberg had lied to them about his "legal problems" up north. They now know that Irving Freiberg had pled guilty to and been adjudicated guilty of conspiracy to commit securities fraud and securities fraud in the United States District Court for the Eastern District of New York. They also learned that he had not made restitution, but still owed millions of dollars in restitution. See Amended Judgment in a Criminal Case, United States of America v. Irving Freiberg, E.D.NY. case no. CR-06-570 and 07-734, April 26, 2012 (original judgment entered January 20, 2012).

19.     Not knowing of the true facts of Irving Freiberg's "legal problems up north," Marc and Michelle followed Irving Freiberg's advice and decided to open an internet business venture. Based on the encouragement of Irving Freiberg, on or about December 5, 2011,

Michelle Larkin invested $15,000 in a new business and incorporated the business in the State of Florida under the name of the plaintiff herein, "CPL MEDIA GROUP, INC."   The principal place of business and mailing address was 1710 North Federal Highway, Delray Beach, Fla.

20.     After creating CPL, Marc worked on behalf of CPL as the business manager to create an internet based business, acting with the advice and encouragement of Irving Freiberg.

21.     On or about February 2, 2012, CPL and Starr Medical Supplies, Inc. and Starr Insurance Group, Inc. relocated their  offices to 8081 North Congress Avenue in Boca Raton, Florida.

22.     On or about that time, plaintiffs became aware that Irving Freiberg's son, defendant Scott Freiberg, approximately 23 years of age, was very computer and technologically competent and was in need of a job.  Being very proficient in matters of computer technology, including networking, software and Facebook applications, Marc let Scott work for Starr Insurance as an independent contractor for IT purposes.  He was also to perform work as needed for Starr Medical Supplies, Inc. and CPL Media, as all were managed out of the same physical location in Boca Raton.  As an "IT" specialist and consultant, he was given passwords and access to plaintiff's computers, software, login information, etc.

23.     The plaintiffs' first business venture with Irving Freiberg was selling through a call center, ADT and General Electric home security systems.  Irving Freiberg's role was to oversee the employees at the call center and to provide sales leads for the associates.  He was not paid any monies because the company (CPL) suffered a loss of $68,000.

24.     In or about February, 2012, Irving Freiberg suggested the use of a call center to generate education leads for online colleges.  For these purposes, CPL worked through a marketing aggregator who collected the data and forwarded it to various online colleges.  CPL terminated the venture approximately 4 to 5 weeks after starting it because it resulted in a loss in excess of $40,000.  Irving Freiberg was not paid any money on this project because it also resulted in a loss to CPL.  Unfortunately, the plaintiffs continued to work with Irving Freiberg despite his ideas not proving profitable.

25.     In or about February, 2012, with Marc being in the insurance business, he discussed with Irving Freiberg a concept of using the internet to market discount health insurance

plans.  CPL created the website www.americanconusmershealth.com., and variations thereof. The website generated revenue, but never resulted in a profit for CPL. The company was seeking persons who wanted a discount health plan, not insurance but a health benefit plan. The plan was administered by New Benefits, a leader in discount benefits and insurance services.  New Benefits provides the products, administration, print services, billing and compliance to help the insureds.  This website was operative until removed by defendants.

26.       In April, 2012, Marc conceived of a business concept of creating a website using the possibility of customers winning a prize if they subscribed as an inducement to subscriber. Those users who subscribed would enter to win a grand prize drawing and be able to constantly engaged on the website to win daily prizes.  The subscriptions would result in a database of valid email addresses whose owners had consented to receiving email marketing.  These databases could then be sold to marketing affiliates for use in email advertising.  The revenue from the marketing affiliates would pay CPL's expenses for the website and the prizes to the winners. The  use of a Facebook application for that specific purpose was central to the business concept and to collect accurate subscriber information.

27.       Irving Freiberg represented that he had information technology ("IT") resources in India that could be used to develop the website for mass email marketing purposes.  He wanted to work for CPL Media using his resources and that in exchange, once CPL Media had recovered monies from losses on previous projects, that he would be paid a percentage of the profits of CPL Media.  Michelle Larkin approved the business concept and Irving Freiberg's participation. While the understanding between the parties was not reduced to writing, at no time was Irving Freiberg to be a part owner of the business, the venture or CPL Media.  He was strictly to be paid a percentage of the profits as a consultant.  He was never given authority to act on behalf of CPL or enter into any agreements on behalf of CPL.

28.       Based on the business concept developed by Marc Sporn, CPL developed a brand and website called "SweepsnPrizes."  The website domain was duly registered with GoDaddy on May 1, 2012.  It is owned by CPL.  CPL also registered with GoDaddy 17 other domain names that are variations of "SweepsNPrizes."

29.       SweepsNprizes has a general sweepstakes website for all consumers age 18 and

older.  Attached hereto as Exhibit 2 is a print out of some of the screen shots from the website.

30.     In addition, the SweepsNprizes brand has category driven prizes targeting different interest.  These are (1) BMW sweepstakes, (2) vacation sweepstakes, (3) Get Out of Debt sweepstakes and (4) Education sweepstakes.  By targeting consumers specific interest, CPL is able to provide its marketing affiliates with a more targeted audience for their email marketing purposes.  Attached as Exhibits 3 - 6 are print outs of screen shots from those websites.

31.     The purpose of the domain and website of "SweepsNprizes" was to offer to willing subscribers a sweepstakes website that gave away a cash payment every ninety days to a winner and enabled individual consumers to play a spin game on the website on a daily basis. The site www.sweepsnprizes.com was launched in June, 2012, since that time over 100,000 consumers and active users have accessed the website.  The website specifically states that any user will be receiving emails daily from CPL's sponsors, i.e. customers and affiliates.

32.     CPL's source of revenue from the website is payment from sponsors which pay CPL for leads generated through the website to use in email marketing campaigns.  From those payments for email leads created, CPL pays the vendors and the prize winners.   A couple of the customers / marketing affiliates of CPL include Flex Marketing Group and Monetize, among others.

33.     The SweepsNprizes website specifically state  they are copyrighted and "All Rights Reserved."   No one has been given permission, orally or in writing, to use or copy pages form  "SweepsNPrizes"  or any of its related websites, all registered to CPL.  It is exclusively for the use and business purposes of CPL Media.

34.     In developing the business and building the website, defendants Irving Freiberg and Scott Freiberg had access to the login names and passwords to CPL's accounts with various marketing affiliates.  However, none of the defendants were ever given authorization to enter into contracts on behalf of CPL,  or to control any of  CPL's "SweepsnPrizes" websites.

35.     Once a viewer of the website subscribes to the site, that viewer gives CPL permission to transmit their data to its customers or marketing affiliates, who then market to the subscribers via emails or links.  If a subscriber responds to an email or link from a marketing company, CPL is then paid a small fee, usually about $1.00, for each "click" or response from their subscriber.  The fees received by CPL from its marketing affiliates are the only source of

revenue for CPL.  It is these revenues that are used to pay for the prizes awarded and the company's vendors.

36.     The website business for SweepNprizes was progressing well. It would still be succeeding had the website and the database of CPL not been stolen and usurped by defendants, acting together in a conspiracy.

37.     The defendants' conspiracy and their unlawful and wrongful actions first came to light on Monday, August 14, 2012.  On that day,  Marc Sporn questioned Irving Freiberg as to the amount of revenue generated by SweepsNPrizes for CPL.  Freiberg responded that the website had generated approximately $21,000 in gross receipts the previous week.  Upon further questioning, Marc requested the login information for a customer, Flex Marketing Group.  Irving would not provide the login information.  Marc then called Flex Marketing and asked about the money it owed CPL.  Flex Marketing (through its employee, Alona Tendler) advised that CPL was not a vendor.  In response, Marc inquired if Irving Freiberg or Lone Star Brands, LLC was a vendor.  Flex Marketing then advised that the company had wired $8,193.90 to defendant Lone Star Brands!  Attached hereto as Exhibit 7 is the information provided by Flex Marketing showing the payment to Irving Freiberg's Lone Star Brands of the amount of $8,193.90.

38.     Marc Sporn questioned Irving Freiberg about the wire transfer of $8,193.90 to Lone Star Brands that should have been sent to CPL Media.  Marc demanded that the money be turned over to plaintiff CPL or CPL would take legal action.  Marc also demanded that Loan Star Brands and Irving Freiberg repay Michelle Larkin the $15,000 owed her. Irving Freiberg did not respond.

39.     The following day, August 14, 2012, it was learned that another of CPL's marketing affiliates, "Monetize,"  had received a telephone call from Irving Freiberg and that Freiberg was requesting a wire transfer in the amount of approximately $3,800 be sent to Lone Star Brands immediately.  This was money owed to CPL.   Monetize then refused to pay Freiberg or CPL and still refuses to pay "until the dispute" is resolved.

40.     To conduct its internet business, CPL contracts for the use of emailing platforms through companies known as "I Contact" and "Exact Target."   These accounts were set up and established solely for the business purposes of "SweepsNprizes" owned by CPL.  The accounts are used to (1) notify clients via an auto responder of their signing up for an account, (2) to

communicate with subscribers to the website via email, (3) store emails from subscribers, (4) maintain a database of subscribers, (5) create and maintain email templates, (6) track subscribers, (7) market to subscribers via multiple emails daily and present offers from sponsors, who are CPL Media's paid customers, and (8) store and maintain the subscriber database and the intellectual property of the website, which are the primary assets of CPL Media and are what it depends upon to generate revenue.

41.    CPL accesses its accounts at IContact and Exact Target by the use of a user name and password.  Irving Freiberg and Marc Sporn each had the password for the accounts.  Those accounts are strictly for the use and benefit of CPL.

42.    On Monday or Tuesday, August 13 or 14, 2012, Irving Freiberg accessed the account and, without authorization of CPL, changed the password and locked Marc Sporn and CPL out of its accounts with "I Contact" and "Exact Target."  Irving Freiberg advised  IContact that he was the owner of CPL Media and the SweepsNprizes website and all the email addresses of subscribers were his property and that IContact should not give access to the database to Mark Sporn or CPL.  Thus Irving Freiberg stole the database built by CPL and CPL has been denied access to its own database of subscribers and the means of contacting them.

43.    By taking control of the accounts of CPL at IContact and Exact Target, the defendants have unlawfully intercepted the electronic communications between CPL and the subscribers to its website.

44.    "Constant Contact" is another email marketing platform.  Freiburg began using Constant Contact to broadcast email to SweepsNprizes subscribers, committing a fraud upon the subscribers by acting as if the emails were from CPL.   As of the date of the filing of this complaint, Constant Contact is still being used by defendants to contact SweepsnPrizes database of subscribers.

45.    On August 14, 2012, Irving Freiberg registered the domain name "Sweeps-Prizes.Com," which is almost identical with CPL's SweepsNprizes.com.  The domain name was registered to defendant Abbeysco, LLC, which is managed by defendant Abbey Freiber.

46.    On Wednesday, August 15, 2012, Marc tried to login to various affiliate accounts of CPL Media's customers.  At that time he learned that the login information and/or passwords had been changed by Irving Freiberg.  Because CPL has not been able to login to its accounts

with its affiliates, CPL has been unable to determine how much money has been diverted from CPL by Irving Freiberg or other defendants for their own purposes.

47.     On Wednesday, April 15, 2012, Marc tried to login to a website for Hitpath, a company which provides affiliate marketing pixel tracking software for CPL Media.  Hitpath licenses a software and system to CPL.  When attempting to login in, he discovered that the login username and/or password had been disabled.   Irving and Scott Freiberg were the only other persons who knew the login and password.  Marc then contacted Hitpath and was fortunate enough to speak to an account representative. They restored Marc's access for CPL, changed the username and password, and restored the functionality that the defendants had disabled.

48.     Defendants also usurped the Facebook application of SweepsNprizes and now the application is controlled by Irving and Scott Freiberg.   At the time of the filing of this complaint, if a registered subsriber to the SweepsNprizes website enters the SweepsNprizes Facebook Application, what appears on screen is the Facebook page and application of SweepsNprizes created and owned by CPL Media.  However, Irving and Scott Freiberg have changed the login identifications and passwords for the Facebook account, and therefore CPL Media has no access to its own Facebook page and no way of communicating with its subscribers through Facebook. All data input from subscribers through the Facebook page is being intercepted by Irving and Scott Freiberg without the permission or consent of CPL Media.

49.     As part of the SweepsNprizes website and application, individuals are directed to return to the website daily to spin to win one of four prizes.  Each day SweepsNprizes has numerous subscribers who win a prize.  As of August 14, 2012, Irving and Scott Freiberg have disabled the database of consumers, preventing CPL Media from sending prizes to the winners. If this is not repaired, the subscribers who won will not receive their prizes and will suspect that they are being defrauded by SweepsNprizes, to wit: CPL Media.   Therefore, the actions of Irving and Scott Freiberg are resulting in numerous victims and subjecting CPL Media to fraud charges from its subscribers.  Attached as Exhibit 8 is a copy of a notice to a prize winner.

50.     On Monday, August 14, 2012, defendants registered the domain name of "Sweeps-Prizes.Com" in the name of defendant Abbeysco, LLC, with defendant Abbey Freiberg named as the administrative contact on the account at abbeysco.6@gmail.com.  Attached hereto as Exhibit 9 is document from Whois  showing the registration. Said domain name was intended

and does bear a name nearly identical to that of SweepsNprizes.com.  With that domain registration, Irving and Scott Freiberg created a website utilizing all of the assets, content, intellectual property, customer base and other assets of CPL Media's SweepsNprizes website. The Freiberg's website has appropriated in it's totality the website of CPL Media's website, even using the address and contact information of CPL Media.  However, when any of CPL Media's 40,739+ subscribers message the Facebook application of SweepsNprizes, that message is intercepted by Sweeps-Prizes.com, owned by defendants Irving, Scott and Abbey Frieberg.

51.     The Freibergs have diverted SweepsNprizes subscriber customer base to an emailing platform that they use and operate, one example is, "Stormpost."  They are using Stormpost, as well as other email platforms, to send emails to CPL Media's subscribers then tricking and defrauding the public by diverting them to their website - Sweeps-Prizes.com, to play the daily games.  Then the Freibergs can generate revenues from their sponsors and avoid paying the subscriber winners.

52.     On Tuesday, August 14, 2012 at 6:09 p.m., EDT, defendant Scott Freiberg sent an email to Jay Shetty and Rajender of Launchship Technology Solutions, Pvt. Ltd., in India, the website developers, directing them to change the administrative password for the SweepsNprizes website, thereby eliminating plaintiffs' accesses to its own website.  Copies are attached as Exhibit 10.  These website and IT developers in India now have control over the SweepsNprizes website being hosted by Liquid Web.  CPL Media is therefore prevented from accessing and controlling its own website.   In essence, defendants have stolen all of plaintiff's intellectual property, its website, its access to marketing, its subscriber list, its affiliate's information, etc. The result is that defendants have hijacked plaintiff's business.

53.     When questioned by Jay at Launchship as to who owned the webserver and database for the website, Irving Freiberg (through email account irv013@gmail.com) advised Launchship, at 10:37 p.m., that he owned the web server and the database and they were in his name. ( See Exhibit 7).

54.     On August 14, 2012 at 6:09 p.m., defendant Scott Freiberg, using email account scott.freiberg6@gmail.com, instructed Launchship to get the website "sweeps-prizes.com" up ASAP.   This is the URL that defendants intend to use to replace the hijacked website of CPL and for direct competition with plaintiff.

55.     By blocking plaintiff's access to its own website and transferring the database on webpages to their own URL and their own control, defendants have caused all electronic communications by subscribers to plaintiff's website to be re-directed to defendant's newly created website.

56.     After complaining to Flex Marketing Group, plaintiff CPL received a letter in response from its attorney, dated August 20, 2012, stating that defendant Lone Star Brands had actually opened an account with Flex Marketing on July 14, 2012 - two days before CPL opened its account.  The letter stated that Flex had received a "steady stream of high quality traffic" from Lone Star and none from CPL.  This is clear evidence that the defendants planned to hijack plaintiff's business as early as July 14, 2012.  The revenue defendants diverted from CPL to Lone Star prior to August 14, 2012 is unknown, but continues.  Attached as Exhibit 10 is a copy of the letter from the General Counsel of Flex Marketing Group, LLC in New York, New York.

57.     As of the date of the filing of this complaint, defendants have "hijacked" plaintiff CPL's website SweepsNprizes and are not allowing plaintiff access or control over CPL's website.

58.     As of the date of the filing of this complaint, defendants have intercepted plaintiff CPL's stored electronic communications and continue to intercept email from subscribers intended for CPL.

59.     As of the date of the filing of this complaint, defendants have intercepted all electronic communications from the subscribers to SweepsNprizes through the Facebook application.

60.     As of the date of the filing of this complaint, defendants are defrauding the subscribers to the "SweepsNprizes" website by not paying the prize money offered on the website.

61.     As of the date of the filing of this complaint the defendants are unfairly competing with CPL by hijacking and usurping CPL's website, preventing CPL from contacting its subscribers, preventing CPL from contacting many of its customers and preventing CPL from accessing its electronic communications.

62.     As of the date of the filing of this complaint, defendants have stolen plaintiff's

trade secrets, primarily its database, and continues to use said database to unfairly compete against plaintiff CPL.

63.     Plaintiff's website is available throughout the United States via the internet.  Its subscribers are all throughout the United States.  Thus it is involved in and impacts interstate commerce, as does the unlawful actions of the defendants.

64.     Defendants repeatedly and willfully copied plaintiff CPL's website and all pages therein, including labels, logos, slogans, trade and service marks, product names, trade dress and copyrighted material. Defendants have repeatedly and willfully copied numerous images, text descriptions, photographs, graphics and other valuable intellectual property from plaintiff's website and placed them directly on their own infringing website.  Attached hereto as Exhibit 11 is a print out of screen shots from defendant's website of www.sweeps-prizes.com as of  August 17, 2012.  These website pages are identical to those of plaintiff CPL.

65.     Plaintiff CPL has been irreparably harmed by defendants' actions in copying and using plaintiff's website and intellectual property, trademarks, copyrighted material. Plaintiff CPL has been irreparably harmed by defendants' hijacking plaintiff's website as well as its subscriber database and contracts with marketing affiliates.  If defendants do not cease and desist their unlawful actions immediately, it will jeopardize the existence of plaintiff CPL and, more importantly, commit a fraud upon thousands of internet and Facebook subscribers to the SweepsNprizes website and its variations.

<u>Count I - Unfair Competition by False Advertising</u>

66.     This is a cause of action for unfair competition by false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a).

66.     The above allegations set forth in paragraphs 1 -  65  are incorporated herein by reference as if fully set forth herein.

67.     Plaintiff CPL's website is hosted by Liquid Planet.  Defendants, acting without authority of plaintiffs and in direct contravention of plaintiff's best interest, directed IT associates in India, Jay Shetty and Rajender of Launchship Technology Solutions, Pvt. Ltd., to pull down CPL's website and to use defendant Abbeysco, LLC's registered domain name and URL of www.sweeps-prizes.com for the hosting of the website and all of its previously published material and the intellectual property of CPL.

68.     Defendants' actions have denied CPL access to its own website.  In essence, defendants hijacked plaintiff's website.

69.     In the unauthorized hijacking of plaintiff's website, defendants are misleading the subscribers and internet users into believing that are using the website of SweepsNprizes.com.

70.     Defendants have engaged in commercial advertising with false and misleading representations of fact relating to the nature, characteristics, and qualities of its products and services.  That is, they are using CPL's website material to offer a product, i.e, prize money that they cannot and are not delivering and also pretending to be the plaintiff's website, when it fact it is not.

71.     The usurping and hijacking of plaintiff's website by defendants and the use of plaintiff's intellectual property, identical website pages, etc., is likely to cause confusion, mistakes and deception as to the affiliation, connection and association of that website with CPL's website.

72.     Plaintiff CPL has suffered damages in the loss of revenue, loss of future revenue, loss of subscribers, loss of affiliates and customers, and will incur the costs of rebuilding its website and possible loss of all future business through SweepsNprizes business concept if the defendants continue their fraud and fail to honor the commitment to award prizes to subscribers who are winners.

73.     Defendants' acts, as alleged herein, constitute a false and misleading description of fact, of which is likely to cause confusion, mistake or deception in violation of 15 U.S.C. §1125(a).

74.     As a result of defendants' unfair competition,  plaintiff has suffered damages with interest and has suffered irreparable injury and damage and, unless restrained, will continue to suffer injury and harm, as well the customers and subscribers of CPL's websites.

75.     Plaintiff has no adequate remedy at law.

76.     Plaintiff seeks relief as set forth below.


## Count II - Trademark Dilution

77.     This is an action pursuant to 15 U.S.C. § 1125© for trademark dilution.

78.     The above allegations set forth in paragraphs 1 -  65  are incorporated herein by

reference as if fully set forth herein.

79.     Plaintiff CPL's website "SweepsNprizes.com"  achieved a tremendous number of subscribers and viewers in a short period of time.  It has achieved an extensive degree of distinctiveness.

80.     As a result of defendants' hijacking, copying, infringing, theft and ongoing improper commercial use of plaintiff's unregistered trademarks, marks and website, defendants have diluted and continue to dilute the distinctive quality of and reputation associated with plaintiff's trademarks, website and copyrighted material.

81.     Defendants' acts of trademark dilution are wilful, wanton, intentional and deliberate.

82.     The harm to plaintiff CPL resulting from defendants acts as set forth above are irreparable, continuing and not fully compensable by money damages.

83.     Plaintiffs have reason to believe that defendants intend to continue unlawfully using plaintiff's illegally and unfairly obtained Marks and website because after having been requested to cease doing so on August 14, 2012, defendants' unlawful actions and unfair competition have increased.

84.     Defendants' unlawful acts have damaged plaintiff CPL and will continue to cause damages and irreparable injury to plaintiff unless enjoined by this Court. As such, plaintiff CPL is entitled to a preliminary and permanent injunction pursuant to 15 U.S.C. § 116(a).

85.     Plaintiff is also entitled to a judgment awarding plaintiff damages equal to three times the amount of damages it has suffered as a result of defendants' unlawful acts or, in the alternative, statute damages as the Court considers just, and as allowed pursuant to 15 U.S.C. § 1117.

86.     Plaintiff seeks judgment for damages and other relief as set forth below.

<u>Count III - Unlawful Interception and Disclosure of Electronic Communications</u>

87.     This is an action by plaintiff CPL Media Group, Inc., against all defendants pursuant to The Stored Communications Act, 18 U.S.C. § 2707(a), for the unlawful interception and disclosure of electronic communications as prohibited by 18 U.S.C.§ 2511.

88.     The allegations set forth in paragraphs 1 - 65  above are incorporated by reference

as if fully set forth herein.

89.    Defendants actions in usurping the website of SweepsNprizes.com, and in re-directing its subscribers to defendants' recently registered URL at sweeps-prizes.com, has resulted in all communications from CPL's subscribers being redirected to defendants's URL.

90.    Irving Freiberg re-directed all electronic communications from plaintiff's website to Hitpath, a URL owned and managed by defendants.

91.    Plaintiff CPL's electronic communications from its subscribers and customers were unlawfully intercepted by defendants, acting individually and jointly, without authorization from plaintiff.  Defendants interception and disclosure of electronic communications without authorization from plaintiff, CPL is in direct violation of 18 U.S.C. § 2511(1).

92.    Plaintiff CPL has suffered damages as a result of defendants' interception and use of electronic communications from plaintiff's subscribers.

93.    Plaintiff  CPL seeks equitable and declaratory relief as may be appropriate, including an order directing defendants to restore to plaintiff CPL its control over its website and electronic communications from its subscribers.

94.    Plaintiff seeks such other relief as is set forth below.


Count IV - Theft of Trade Secrets

95.    This is an actions pursuant to Florida's Uniform Trade Secrets Act, Fla. Stat. §§ 688.001 et seq.

96.    The allegations set forth in paragraphs 1 - 65 are incorporated by reference as if fully set forth herein.

97.    Plaintiff's database of subscribers to its websites constitute a valuable trade secret as defined in Fla. Stat. § 688.002(4) in that the information in the database constitutes a compilation that has independent economic value and is not generally known to other persons without the express knowledge and consent of CPL.   As such, the contents of the subscriber database are protected and guarded by plaintiff to maintain its secrecy except only for the use of plaintiff in its business.

98.    Defendants have stolen and unlawfully acquired and misappropriated plaintiff's database and thus its trade secrets and is using those trade secrets to compete against plaintiff. A

99.     Also, defendants have intercepted communications with plaintiff's subscribers. Such communications will directly reveal CPL's subscriber database, which is its trade secret.

99.     Plaintiff  CPL has suffered damages and will continue to suffer damages as a result of defendants' misappropriation of its database.

100.    Pursuant to Fla. Stat. § 688.003, plaintiff CPL seeks injunctive relief to order defendants to cease and desist from any use of  CPL's subscriber database, electronic communications with its subscribers, and other confidential business information that constitute trade secrets.

Count V - Theft and Fraud

101.    This is a common law action for theft and fraud by plaintiff CPL against all defendants.

102.    The allegations set forth above in paragraphs 1 - 65 are incorporated by reference as if fully set forth herein.

103.    On or about August 10, 2012, defendant Irving Freiberg directed Flex Marketing, a customer of plaintiff CPL, to send to him and defendant money that was due and owing to plaintiff pursuant to an agreement between plaintiff and Flex Marketing.  As a result of defendants' fraudulent representations and statements to Flex Marketing, to wit: that defendants were entitled to said monies, Flex Marketing wired $8,193.90 to defendant Lone Star Brands, LLC.   This money should have been paid to plaintiff CPL and was rightfully CPL's money.

104.    As a result of the fraudulent representations made by defendants to Flex Marketing, plaintiff has suffered a loss of $8,193.90.

105.    Defendants have undertaken other efforts to divert monies due to CPL from other marketing affiliates.  The amount of any monies so received is unknown at this time.

106.    Defendants have stolen and misappropriated CPL's subscriber database, which has independent economic value in an amount that cannot be determined at this time.

107.    Plaintiff CPL seeks a judgment for damages in excess of $75,000, plus such other relief as set forth below.

Count VI - Unjust Enrichment

108.    This is a cause of action by plaintiff CPL against all defendants for unjust enrichment.

109.    The allegations set forth above in paragraphs 1 - 65 are incorporated by reference as if fully set forth herein.

110.    Defendants' acts, as alleged herein, have resulted in the unjust enrichment of the defendants in violation of the Florida common law.

111.    Defendants' acts, as alleged herein, have caused irreparable injury and damage to plaintiff and, unless restrained, will continue to do so.

112.    As a result, plaintiff has suffered damages with interest.

113.    Plaintiff  CPL seeks relief as set forth below.


Count VI -  Conspiracy

114.    This is a common law cause of action by plaintiff CPL against all defendants for civil conspiracy.

115.    The allegations set forth above in paragraphs 1 - 65 are incorporated by reference as if fully set forth herein.

116.    Defendants did conspire, combine and agree to, and by a concert of actions did unlawfully compete against plaintiff CPL, intercepted electronic communications between plaintiff and its subscribers and others, committed fraud against plaintiff and its customers by stealing  money belonging to plaintiff, and did unlawfully violate plaintiff's copyrights and copy its intellectual property and unlawfully deprive plaintiff of its property by denying it access to its website and intellectual property.

117.    As a result of defendants' conspiracy,  plaintiff has suffered loss of revenue and profits and will continue to suffer damages in the future.

118.    Plaintiff seeks such other relief as is set forth below.


Count VII - Intentional Interference with  Contractual Relationships

119.    This is a common law cause of action by plaintiff CPL against all defendants for intentional interference with contractual relationships.

120.    The allegations set forth above in paragraphs 1 - 65 are incorporated by reference

as if fully set forth herein.

121.    Plaintiff CPL had ongoing contractual and business relationships with businesses such as Flex Marketing Group, Monetize, Hitpath, IContact, and others who were customers of CPL and/or who performed services for CPL.

122.    Defendants knowingly and intentionally interfered with plaintiff's contractual relationships by contacting said customers and redirecting payments due from said customers and the business of said customers to defendants' own use and benefit.

123.    Defendants used fraudulent representations to interfere with plaintiff's business and contractual relationships with its customers.

124.    As a result of defendants' intentional and unlawful interference with the business and contractual relationships between plaintiff CPL and its customers, plaintiff has suffered a loss of revenue, and a loss of business reputation, and will continue to suffer said losses in the future.

125.    Plaintiff seeks such other relief as set forth below.

<u>Count VIII - Deceptive and Unfair Trade Practices</u>

126.    This is an action pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 et seq., and more particularly. Fla. Stat. § 501.211.

127.    The allegations set forth in paragraphs 1 - 65 above are incorporated by reference as if fully set forth herein.

128.    Plaintiff CPL is an "interested party" as defined in Fla. Stat. § 501.203 (6).

129.    Defendants having stolen, copied and usurped plaintiff CPL's website, intellectual property, and subscriber database.

130.    Defendants have intentionally and wilfully interfered with plaintiff CPL's contractual relationships with its marketing affiliates.

131.    Defendants did intentionally prevent plaintiff CPL from maintaining electronic communications with its subscribers.

132.    Defendants have intentionally created a similarly named domain and are intentionally using said similar domain name to steal plaintiff's subscribers.

133.    Defendants have intentionally stolen plaintiff CPL's Facebook application and are

using such to divert subscribers from plaintiff's domains and websites to defendants' domains websites.

134.    The above acts of defendants constitute unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of commerce as defined in Fla. Stat. § 501.204.

135.    Plaintiff has suffered damages as a result of defendants' actions, including a loss of revenue, loss of assets including its database of subscribers, loss of intellectual property and loss of goodwill and business relationships.

136.    Defendants' deceptive, unfair and commercially exploitive acts, as alleged herein, were in bad faith and with the intent to defraud CPL's website subscribers.

137.    Plaintiff is seeking to recover its damages, plus attorney's fees and costs as provided in Fla. Stat. § 501.2105 and such other relief as is requested below.


## Count VIII - Conversion

138.    This an action for conversion under Florida law.

139.    Defendants have exceeded their authority for access to plaintiff CPL's website, database of subscribers, electronic communications, and other valuable intellectual property, and in doing so have taken control over plaintiff's website and database and other valuable intellectual property and denied plaintiff's access to its own property, tangible and intangible.

140.    Plaintiff has demanded access to its property and that defendants cease and desist from using plaintiff's property, but defendants have refused to do so.

141.    As a result plaintiff has suffered damages and will continue to suffer damages in the future.

142.    Plaintiff seeks an order compelling defendants to return to plaintiff CPL the possession and control over its property including its website, database, and electronic communications and such other relief as is requested hereinafter.


## Count IX  - Declaratory Judgment

143.    This is a action for a declaratory judgment pursuant to 28 U.S.C. § 2201.

144.    The allegations set forth in paragraphs 1 - 65 above are incorporated by reference

as if fully set forth herein.

145.    Plaintiff CPL is the creator and owner of the "SweepsNprizes website" and related websites and the contents and pages in said websites.

146.    Defendants have usurped and hijacked plaintiff CPL's websites and have copied all of the contents of plaintiff's website for their own use and benefit and to gain an unfair advantage.

147.    There is a controversy between the parties as to who has ownership of the website and website pages of "SweepsNprizes," as set forth in Exhibits ____, in that defendants have asserted in an email that they are the owners and have rights to the website and contents therein. See Exhibit 8.

148.    Because defendants have asserted to third parties that they own plaintiff's websites and their contents, and database of subscribers, those third parties are confused as to the rights to said websites, subsriber databases, and revenue generated by their use by marketing affiliates.

149.    Plaintiff seek a declaratory judgment determining that plaintiff CPL owns the website at "SweepsNprizes" and all the content therein and that defendants have no right to use or copy the contents of plaintiff's website or its content and have no right to use said pages or content or to interfere with plaintiff's website by directing others to deny plaintiff's access to their own website and use of its content, database and electronic communications generated from the website.


<u>Count XII - Money Lent</u>

150.    This is an action by plaintiff Michelle Larkin against defendants Irving Freiberg and Lone Star Brands, LLC for money lent.

152.    The allegations set forth in paragraphs 1 - 65  above are incorporated by reference as if fully set forth herein.

153.    On  December 2, 1011, plaintiff, Michelle Larkin, lent defendants Irving Freiberg and Lone Star $25,000, to be paid back with thirty (30) days.  Larkin had the monies wire transferred into Lone Star's account at Comerica Bank. See Exhibit 1.

154.    Defendants only paid plaintiff Larkin $10,000 towards the monies lent.  As of the

date of this filing, defendant owes plaintiff $15,000.

155.   Plaintiff  Michelle Larkin demands judgment in her favor against defendants Irving Freiberg and Lone Star Brands, LLC for $15,000.00.


## VERIFICATION

Pursuant to 28 U.S.C. Sec. 1746, I declare under penalty of perjury under the laws of the United States of America that I have read the allegations in the above complaint and that the facts therein are true and correct and based on my personal knowledge and investigation as reflected in the exhibits attached.

Executed this 21st day of August, 2012.

/s/Marc Sporn
Marc Sporn
655 S.E. 1st Street
Delray Beach, Florida


## PRAYER CLAUSE

WHEREFORE, plaintiff CPL MEDIA GROUP, INC., based on the foregoing causes of action, demands judgment against defendants IRVING FREIBERG, SCOTT FREIBERG, ABBEY FREIBERG, ABBEYSCO, LLC AND  LONE STAR BRANDS, LLC, for damages, attorney's fees and costs as allowed by law and further request:

1.  A preliminary and permanent injunction enjoining and restraining defendants and their officers, directors, principals, agents, servants, employees, successors, assigns, attorneys and all those persons in active concert or participation therewith who received actual notice of this Court's orders:

(a)  from copying pages from CPL's websites, and broadcasting and/or publishing on the internet copies of pages from CPL's websites via other domain names;

(b) from publishing on the internet or otherwise using any marks, trademarks, logos, designs, methodology, or any advertising or communication likely to cause confusion with CPL's SweepsNprizes or similar websites;

© from taking any action causing subscribers' mistakes or misleading and/or deceiving subscribers, internet viewers, Facebook users, and marketing affiliates to access

defendants' websites and to communicate with defendants in the mistaken belief they are affiliated with CPL's SweepsNprizes;

(d)  From any actions that would mistake or lead subscribers, internet users, Facebook users, etc., as to the affiliation, connection, or association of defendants with CPL or CPL's SweepNprizes, etc. websites, or as to the origin, sponsorship, or approval of the goods, services, or commercial activities of plaintiff, or causing injury to the business reputation of plaintiff, or dilution of the distinctiveness of plaintiff CPL's website, copyrighted material, registered or unregistered trademarks and designs, tradesecrets, database and other forms of advertisement;

(e)   From directly or indirectly falsely designating or representing to any third parties, and especially those engaged in business relationships with plaintiff, such as, but not limited to, Jay Shetty and Rajender of Launchship Technology Solutions, Pvt. Ltd., IContact, Exact Target, Liquid Planet, Flex Marketing Group, LLC, Stormpost, and Hitpath, and others, that defendants have any ownership rights over CPL, its websites such as SweepsNprizes and related websites, the content of such websites, CPL's database of subscribers, electronic communications of CPL and that all material defendants are using for their own websites such as Sweep-Prizes.com are to be withdraw.

(e)  From directly or indirectly using the infringing marks or any confusingly similar variants, iterations or forms thereof, which is likely to cause confusion or further irreparable harm to Plaintiff's business reputation or goodwill, whether via the internet or otherwise;

(f)  To transfer and assign to CPL all rights and interests in the domain name Sweeps-prizes.com and such related domain names as defendants may have registered since November, 2011;

(g)  To immediately institute full compliance with any order entered by this Court, and within five 5) days following the date of entry of any preliminary or permanent injunctive relief issued by this Court, profound and file a statement, under oat and penalty of perjury, that each and every injunctive provision has been fully and completely complied with; and for

2.   An accounting and payment of all revenues received by defendants while engaging in the acts complained of herein; and

3.   A judgment for all monetary damages suffered by plaintiff; and

4.   An award of attorneys fees and all costs of prosecution, pursuant to 15 U.S.C. §1125; by 18 U.S.C. 2707(a), Fla. Stat. § 688.005; and as otherwise allowed by law.

5.    Such additional remedies as set forth in 15 U.S.C. § 1117(a) and § 1118, including, but not limited to, loss profits, damages and costs and attorney's fees, defendants' profits, or for $100,000 for loss of its domain, whichever is greater.

6.   A judgment for damages in excess of $1,000 per intercepted communication and any profits made by the defendants using said electronic communications and declaratory relief as may be necessary and proper to restore plaintiff's rightful control of its electronic communications; as set forth in 18 U.S.C. § 2707 (b) and ©.

7.   Such other interlocutory and permanent relief as this Court may deem just and proper; and

8.   A Declaratory Judgment declaring that all the pages and material, trademarks, designs, webpages, database, etc., of plaintiff CPL are the property of CPL and that any monies due or owing for the use of CPL's subscriber database are due and owing to plaintiff and not to defendants, and

9.   Judgment for plaintiff Michelle Larkin against defendants Irving Freiberg and Lone Star Brands, LLC for $15,000.

Respectfully submitted,


/s/Don R. Boswell
Don R. Boswell, BCS
Fla. Bar No. 145894
Attorney for Plaintiffs
Akers & Boswell, P.A.
1601 Belvedere Road, Suite 106-E
West Palm Beach, FL 33406
561-547-6300; Fax 561-828-9212
dboswell@akers-boswell.com